658 So.2d 398 (1995)
Jerry L. BASSETT, as Director of the Legislative Reference Service of the State of Alabama
v.
Demetrius C. NEWTON, as a Member of the House of Representatives of the State of Alabama.
1921724.
Supreme Court of Alabama.
March 3, 1995.
*399 Alvin T. Prestwood and Linda G. Smith of Capouano, Wampold, Prestwood & Sansone, P.A., Montgomery, for appellant.
David J. Vann and William M. Pate, Jr., Birmingham, for appellee.
*400 James M. Campbell, for Legislative Council of State of Ala., amicus curiae.
COOK, Justice.
The director of the Legislative Reference Service (L.R.S.) appeals from a judgment of the Montgomery Circuit court enjoining the L.R.S. from refusing to furnish copies of proposed bills after notice of those bills has been published.
The question presented is whether the L.R.S. has the statutory authority to refuse to release details regarding a proposed bill after the sponsoring legislator has initiated public notice of it. L.R.S. Director Jerry Bassett argues that the release of information regarding a bill before its introduction before the Legislature would be improper. Representative Demetrius Newton contends that the detailed substance of a bill should be available to interested parties once the legislator gives public notice of the intent to introduce the bill.
On June 23, 1993, two legal notices were published in the Alabama Messenger newspaper regarding two bills that Senator Fred Horn intended to introduce in the next legislative session. The bills proposed an increase in the expense accounts for the mayor of the City of Birmingham and the members of the Birmingham City Council, subject to a referendum. The notices synopsized the bills without extensive detail.
On July 8, 1993, Representative Newton, who represents a portion of Birmingham, asked Bassett to supply him with copies of Senator Horn's bills. On July 9, 1993, Bassett refused Newton's request, claiming the L.R.S. has an attorney-client relationship with legislators and that release of the bill's details would violate the attorney-client privilege. Montgomery Circuit Court Judge Randall Thomas ruled that the L.R.S. could not refuse to supply a copy of a proposed bill to a member of the Legislature or to any affected citizen after public notice of the proposed bill had been published. We affirm.
The issue in this case touches, at least in part, the state's hierarchy of laws. Constitutional provisions control in any case of conflict with lesser laws, such as statutes, local ordinances, or administrative regulations. Accordingly, the Alabama constitution has priority over the state Code.
Article IV, Alabama Constitution 1901, §§ 106 and 110, as modified by Amendment 341 and Amendments 375 and 397 respectively, mandate that notice be published of an intent to pass a general law that applies to only one municipality. The policy of the notice requirement is to inform all persons affected by the law and to allow them to challenge the legislation; to prevent the deception of the citizens in the community who would be affected by the law; and to avert a fraud on the public as a result of the community's misunderstanding about the purpose of the legislation. Deputy Sheriffs Law Enforcement Ass'n v. Mobile County, 590 So.2d 239, 241 (Ala.1991).
The public notice need not give all the details of the bill, but it must state the substance of the bill, i.e., its material part and meaning as opposed to the mere purpose or subject. Phalen v. Birmingham Racing Comm'n, 481 So.2d 1108, 1119 (Ala.1985). While the particulars of a proposed bill need not be set out in the public notice, we have not anywhere held or suggested that the citizens who would be affected by a proposed bill could not ask for more detail. Indeed, the policy of the public notice requirement supports the idea that citizens should be able to get the specific information they may need in order to avoid any misunderstanding about the legislation. The information may help them determine whether they want to support or to challenge the proposed law.
The question when the citizens should be entitled to this information gets us closer to the issue here. Bassett argues that interested parties can not get additional information about the proposed law until the legislator introduces the bill in the Legislature. He relies on § 29-7-6(c), Ala.Code 1975:
"When responding to a request, the director and each officer and employee of the Legislative Reference Service shall maintain the attorney-client relationship with the person making the request. All requests for assistance and the contents *401 thereof, including, but not limited to, the fact a request was made, any materials related to the request, and the work product related to the request, shall be confidential and privileged until released by the member of the legislature in whose name the request was made, the Lieutenant Governor, or the Governor."
(Emphasis added.)
Among the L.R.S.'s statutory duties are helping legislators draft proposed bills and amendments to bills, preparing the Code of statutes, and performing other tasks related to the service of the Legislature. Ala.Code 1975, § 29-7-6(a). To that end, § 29-7-6(c) directs that any information related to these services receive attorney-client confidentiality until it is "released" by the legislator. To "release" means to permit to be issued, shown, published, broadcast; to put into circulation. Webster's New World Dictionary of the American Language 1199 (2d ed. 1984). On June 23, 1993, Senator Horn released the information when he published public notices in the Alabama Messenger. Senator Horn then put into public circulation the substantive portion of the bills he would put before the Legislature. The releases alerted Representative Newton who, as a citizen and as a legislative representative of other Birmingham citizens, had the right to ask for more information about the legislation. We hold that a legislator's giving public notice of a proposed bill is sufficient as a "release" of information within the meaning of § 29-7-6(c).
Bassett's argument hinges on the attorney-client privilege. He asserts that the relationship between the L.R.S. and legislators is stronger than the attorney-client relationship, because he says, L.R.S. employees can not acknowledge that a request to draft a bill or an amendment has been made until the legislator decides to release that information. He likens the privilege created by that relationship to the privilege afforded our Representatives and Senators by the Speech and Debate Clause of the United States Constitution (Art. I, § 6), and claims that that relationship encourages the legislators to reveal all the facts necessary to furnish proper legal representation.
The basis of Alabama's attorney-client privilege statute, § 12-21-161, is the principle that where legal advice of any kind is sought from a professional legal adviser acting in that capacity, the communications relating to that advice, made in confidence by the client, are at the client's instance permanently protected from disclosure by the legal adviser, unless the protection is waived. Richards v. Lennox Industries, Inc., 574 So.2d 736, 739 (Ala.1991) (quoting C. Gamble, McElroy's Alabama Evidence § 388.01 (3d ed. 1977)), and citing 8 Wigmore, Evidence § 2292 (McNaughton rev. 1961). Applying the law in this case, Senator Horn sought the L.R.S.'s expertise in writing the bill he intended to introduce in the Legislature. While it is likely that the L.R.S. did not give Senator Horn any legal advice in the strict sense, the information, conversations, and discussions between the two regarding the legislation understandably should be confidential until Senator Horn decides otherwise. We must conclude from the facts that Senator Horn did decide to waive the requirement of confidentiality.
While we appreciate Bassett's right-to-confidentiality argument, we do not address his contentions that the requirement of confidentiality imposed on the L.R.S. is stronger than the confidentiality requirement arising out of the attorney-client relationship and that the L.R.S.'s privilege is analogous to that given under the Speech and Debate Clause. We need not discuss those contentions, given our conclusion that "release" occurs when public notice is given and the fact that Representative Newton sought additional information from the L.R.S. about the proposed legislation only after that public notice had been published.
Further, we think that the confidentiality contention is partially mooted by the fact that a portion of the information Bassett says is privileged has been published to others. We have held that the attorney-client privilege does not cover statements that are intended to be communicated to third persons. That intent divests from the statement any confidential status. Hughes v. Wallace, 429 So.2d 981, 983 (Ala.1983). While the *402 expectation of some secrecy is reasonable during the preparation of the bill, it is unreasonable to expect the same secrecy after the substance of the legislation has been published. To read § 29-7-6(c) as requiring attorney-client confidentiality extending beyond the publication of public notice of an intended bill would make the section conflict with our state constitution, specifically § 106, as amended by Amendment 341, and § 110, as amended by Amendments 375 and 397. This Court considers a challenge to the constitutionality of a statute with a presumption and intendment in favor of the statute, and it seeks "to sustain rather than strike down the enactment of a coordinate branch of the government." However, if the statute "unreasonably invades rights guaranteed by the Constitution, we have not only the power but the duty to strike it down." Moore v. Mobile Infirmary Ass'n, 592 So.2d 156, 159 (Ala. 1991). We conclude that § 29-7-6(c) does not violate the state constitution, given our holding that a legislator waives any confidentiality regarding proposed legislation once public notice is published.
Traditionally, waiver is described as an intentional relinquishment of a known right. Voluntary disclosure bars a subsequent claim of privilege based on confidentiality. Edward W. Cleary et al., McCormick on Evidence § 93 n. 3 (3d ed. 1984). Waiver includes not merely words or conduct expressing an intention to relinquish a known right, but conduct, such as partial disclosure, that would make it unfair for the client to insist on the privilege thereafter. McCormick § 93; 8 Wigmore, Evidence §§ 2327-2329 (McNaughton rev. 1961). Professor Gamble writes that the model statement on the waiver principle says a person upon whom the rules confer a privilege against disclosure of the confidential matter or communication waives the privilege by voluntarily disclosing or consenting to disclosure of any significant part of the matter or communication. The client alone has the power to waive the attorney-client privilege. Charles W. Gamble, McElroy's Alabama Evidence § 394.01 (4th ed. 1991).
There is no dispute that Senator Horn, the client and holder of the attorney-client privilege, voluntarily disclosed in a public notice the essential terms of his proposed legislation. His doing so waived the confidentiality he had previously been entitled to concerning the proposed law. We reject Bassett's contention that the public notice was not "voluntary" because it is required by law. The law does not force lawmakers to give public notice unless and until they are ready to move forward in the process of creating a law. At that point, the legislator is, or should be, prepared to publicly communicate and defend the proposed legislation.
It is well established that the party who asserts the attorney-client privilege must establish (1) the presence of an attorney-client relationship, (2) the facts demonstrating the communications were within the privilege, and (3) the prejudicial effect to the client that would result from any disclosure of the privileged information. Swain v. Terry, 454 So.2d 948, 953 (Ala.1984). Even if we allow that there was a relationship giving rise to an attorney-client privilege, Bassett's assertions fail on the remaining points. The information Representative Newton sought was not confidential; his request for information came after public notice of the bills had been published. Representative Newton asked only for copies of the intended bills, not work product, writings, or records indicating Senator Horn's thoughts and considerations as he developed the legislation. If the L.R.S. has concerns that proposed bills might be changed before they are introduced, then the L.R.S. could simply mention that the legislation as proposed is subject to change. Certainly Representative Newton would no doubt understand, as would a citizen concerned enough to request a copy of a proposed bill, that the nature of the legislative process includes amending a proposal to shape it so that a majority of the legislators will vote for it. Further, we think it unlikely that Senator Horn would encounter any prejudice in passing the legislation simply because the L.R.S. has released copies of his bills to concerned citizens before those bills are actually introduced before the Legislature. In any event, Bassett's arguments have not persuaded us toward that conclusion.
*403 For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
MADDOX, SHORES, KENNEDY, INGRAM and BUTTS, JJ., concur.
HOUSTON, J., concurs in the result.
HOUSTON, Justice (concurring in the result).
In my opinion, Ala.Code 1975, § 29-7-6(c), is not unconstitutional as it relates to a local bill for which § 106, Constitution of Alabama of 1901, requires publication.